UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Fiorito,<br><br>　　　　　Petitioner,<br><br>v.<br><br>Warden Fikes<br><br>　　　　　Respondent. | Case No. 22-CV-00512 (WMW/HB)<br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

　　This matter is before the Court on Petitioner Michael Fiorito's Combined Motion for an Emergency Preliminary Injunction and/or Temporary Restraining Order (TRO) and Motion to Show Cause (TRO Mot. [ECF No. 11]). Both the motion and underlying Petition for Writ of Habeas Corpus [ECF No. 1] have been referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for the issuance of a report and recommendation. This report and recommendation addresses only Fiorito's motion; the Petition will be considered separately. For the reasons set forth fully below, the Court recommends that the motion be denied.

**I.　Background**

　　Fiorito is serving a sentence for convictions of conspiracy to commit mail fraud and mail fraud, with a projected release date of August 22, 2026. (Lee-Lo Decl. ¶ 3 [ECF No. 24].) He is currently imprisoned in Federal Correctional Institution (FCI) Sandstone, though he was previously imprisoned in other federal prisons including FCI-Ashland.

1

(Pet. Attachment A-1 ¶¶ 5–10 [ECF No. 1-1].)  In 2016, staff in FCI-Ashland filed and sustained two incident reports against Fiorito for violating prison rules.  (Lee-Lo Decl. ¶ 7; Lee-Lo Exs. D at 1–2, E, F [ECF Nos. 24-4, 24-5, 24-6].)  In February 2022, staff in FCI-Sandstone filed and sustained another incident report against Fiorito.  (Lee-Lo Decl. ¶ 8; Lee-Lo Exs. D at 1, G [ECF No. 24-7].)  On February 19, 2022, Fiorito's case manager at FCI-Sandstone informed him that due to these incident reports, his Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) risk was going to increase from low to medium.  (Pet. Attachment A-1 ¶¶ 36–37; Lee-Lo Decl. ¶¶ 8–9; Lee-Lo Exs. C, I [ECF Nos. 24-3, 24-9].)

For context, PATTERN is a component of the Bureau of Prison's implementation of the First Step Act's (FSA) system intended to reduce the risk of federal prisoners recidivating after release.  *See generally* 18 U.S.C. §§ 3631–3635; U.S. Dep't of Justice, *The First Step Act of 2018: Risk and Needs Assessment System,* at iv ("*Risk and Needs Report*"), available at https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf (last visited May 10, 2022).  Under the FSA, a prisoner may earn various benefits including time credits towards an early transfer to pre-release custody or supervised release by successfully participating in programs and activities that the BOP has determined through a PATTERN assessment will help the prisoner address social, emotional, and material needs and thereby reduce their risk of recidivating.  *See* 18 U.S.C. §§ 3631–3635; 28 C.F.R. §§ 523.40–523.44.  The BOP also uses PATTERN to periodically (re)assess a prisoner's recidivism risk as minimum, low, medium, or high based on a score calculated from several factors, including the number

and seriousness of incident reports filed against a prisoner in the past 120 months, and the time since the last incident report. (Pet. Attachment B [ECF No. 1-1]; Lee-Lo Exs. C, I.) An otherwise eligible prisoner may earn time credits regardless of risk level, but a prisoner who maintains minimum or low risk over the two most recent assessments and is currently low or minimum earns time credits at a faster rate. 28 C.F.R. § 523.42. Also, while the BOP ultimately retains discretion over whether to apply earned time credits to a prisoner's early release, a prisoner who maintains a low or minimal risk faces fewer administrative hurdles to convincing the BOP to do so. *See generally* 28 C.F.R. § 523.44.

Upon learning that his PATTERN risk was increasing, Fiorito filed his Petition for Writ of Habeas Corpus in this District on February 28, 2022. He seeks to have the two FCI-Ashland incident reports expunged from his BOP record on the grounds that the prison staff filed the reports in retaliation for his exercise of First Amendment rights and violated his due process rights when issuing and reviewing the reports, and on the additional ground that he was not guilty of the alleged violations. He then seeks to have BOP staff recalculate his PATTERN risk to low. (Pet. ¶¶ 13, 15; Pet. Attachment A-1 ¶¶ 10–15, 40–45, Relief.)

In March 2022, after the Petition was filed, FCI-Sandstone staff filed another incident report against Fiorito. (Lee-Lo Decl. ¶ 8; Lee-Lo Exs. D at 1, H [ECF No. 24-8].) Fiorito then filed the instant motion, alleging that prison staff, including Respondent Warden Fikes of FCI-Sandstone, have confined him in the "hole" (Special Housing Unit/SHU, also referred to as "solitary") indefinitely without any cause and in retaliation

3

for filing his petition and other civil actions and grievances against BOP staff. (TRO Mot. ¶¶ 1–2, 7–8.) He further alleges that while in the "hole," he has been denied access to legal materials in his personal property and in the prison library, that he cannot effectively perform computerized legal research because of a metal grate covering the prison library computer screen, he is subjected to 24-hour lighting in violation of Supreme Court precedent, and he lacks a legally-mandated emergency/panic button in the cell. (*Id.* ¶¶ 3–5, 12, 15.) He contends his confinement in the "hole" is an unconstitutional retaliation for exercising his First Amendment rights to free speech and to access the courts, and it prevents him from being able to prosecute his petition. (*Id.* ¶¶ 11, 18, 21–22.) He asks the Court to order Respondent to show cause why he should be held in the "hole," and seeks a TRO or preliminary injunction ordering his release from the "hole," allowing him access to his legal materials and legal books mailed to him while in the "hole," and mandating removal of the metal grate from the computer screen. (*Id.* ¶¶ 13–15, Conclusion.) He also asks the Court to consider ordering Fikes to provide bi-monthly updates on his status and to consider appointing counsel "for the limited purpose of obtaining a preliminary injunction." (*Id.* Conclusion.)

Fikes filed a combined response both to the Petition and this motion on May 4, 2022, and Fiorito a combined reply on May 19, 2022. (Def's Mem. [ECF No. 23]; Pl's Reply [ECF No. 27].)

## II.   Discussion

Generally, the purpose of a preliminary injunction is "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's

4

merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Id.* Even if the facts alleged in the motion "might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction" in a lawsuit raising different claims and requesting different relief. *Id.* "This requirement is widely accepted in the Eighth Circuit." *Munt v. Larson*, No. 15-cv-0582 (SRN/SER), 2015 WL 5673108, at *8 (D. Minn. Sept. 23, 2015) (collecting cases).

Here, the injury claimed in this motion and the conduct asserted in his Petition are unrelated. The habeas petition seeks expungement of incident reports from FCI-Ashland based on constitutional violations by FCI-Ashland staff, and recalculation of Fiorito's PATTERN risk and time credits. A petition for habeas relief is the appropriate vehicle for claims such as these, which relate to the length of confinement of the prisoner. The instant motion, however, seeks to halt alleged constitutional violations by FCI-Sandstone staff unrelated to the FCI-Ashland staff or incident reports, and seeks relief that does not pertain to the ultimate relief sought by the underlying habeas petition, i.e., the expungement of the FCI-Ashland incident reports and the recalculation of Fiorito's PATTERN risk assessment insofar as it was affected by those reports. Furthermore, much of the relief sought by the motion relates to conditions of confinement, which are not appropriately pursued by a habeas petition but rather by a civil rights action.[1] *See*

---

[1] Indeed, as discussed *infra*, Fiorito has several pending actions in this District in which he is directly challenging his confinement in the "hole" at FCI-Sandstone.

5

*Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014) ("[I]f the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy") (cleaned up).

The only aspect of the motion conceivably related to the underlying habeas petition is Fiorito's claim that Respondent's actions are interfering with his ability to prosecute this case. But courts in this District have interpreted the rule in *Devose* to deny preliminary injunctions as unrelated to the claims and relief in the case even in these circumstances. *See Munt v. Larson*, No. 15-cv-0582 (SRN/SER), 2015 WL 5673087, at *20–21 (D. Minn. July 30, 2015), *report and recommendation adopted in part, rejected in part,* 2015 WL 5673108 (D. Minn. Sept. 23, 2015).

Even if the Court considered the merits of Fiorito's motion based on that narrow arguable connection to his petition, it would conclude that he fails to show the imminent risk of irreparable harm necessary for a preliminary injunction. Fiorito has been a prodigious, active litigant. Between March 25, 2022, when he filed this motion, and May 1, 2022, Fiorito filed no less than seven new lawsuits against staff at FCI-Sandstone in this District or in Minnesota state courts (since removed to this District). (*See* Case Nos. 0:22-cv-00749-PJS-TNL; 0:22-cv-00759-PJS-TNL; 0:22-cv-00797-PJS-TNL; 0:22-cv-00923-PJS-TNL; 0:22-cv-00924-PJS-TNL; 0:22-cv-00925-PJS-TNL; 0:22-cv-00927-PJS-TNL.) In several, Fiorito attacks his confinement in the "hole" at FCI-Sandstone, inability to access legal materials and papers, and the grate over the computer screen. (*See, e.g.,* ECF No. 1 in Case No. 0:22-cv-00749, ECF No. 1 in Case No. 0:22-cv-00759, ECF No. 1 in Case No. 0:22-cv-00797.) He also requests in those lawsuits a preliminary

6

injunction releasing him from the "hole," granting him access to his legal materials and legal books, removing the computer screen grate, and restoring his FSA time credits. (*Id.*)  He has been able to actively engage with the court regarding these claims and issues, including arguing specific points of federal procedural law with citations to appropriate statutes and rules in these cases.  (*See, e.g.,* May 9, 2022 Order at 6–7 [ECF No. 13 in Case No. 0:22-cv-00927].)  Likewise, the arguments and citations to case law and statutory authorities in his reply in support of his Petition and this motion in this case show he has access to his case files and to legal materials.  (*See generally* Pl's Reply.)[2]

And finally, any harm arguably related to this action resulting from limitations in Fiorito's ability to access legal materials while he is in the "hole" could only relate to his ability to timely prosecute this Petition, the point of which is to assure his release is not impermissibly delayed through a denial of FSA time credits.  But aside from the fact that briefing on the Petition is already complete, Fiorito is not scheduled for release until 2026.  As the Honorable Patrick J. Schiltz has noted in connection with another of Fiorito's cases, "if Fiorito is entitled to restoration of credits towards his sentence, then this Court has *years* to order that restoration."  (May 9, 2022 Order at 9, n. 5 [ECF No. 13 in Case No. 0:22-cv-00927].)  Thus, Fiorito has alleged nothing in this motion that would suggest an imminent risk of irreparable harm to his ability to prosecute this Petition or benefit fully from any relief that may be awarded.

---

[2] A declaration by Ronald Warlick, a captain at FCI-Sandstone, further undermines Fiorito's position that his access to legal materials is as limited as he claims. (Warlick Decl. [ECF No. 25].)

7

## III. Recommendation

For the foregoing reasons, the Court respectfully recommends that Petitioner's Combined Motion for an Emergency Preliminary Injunction and/or Temporary Restraining Order (TRO) and Motion to Show Cause [ECF No. 11] be **DENIED**.

Dated: May 23, 2022

*s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge